**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**D. H. FARMS CO., Respondent.**

**No. 72–2195.**

United States Court of Appeals, Sixth Circuit.

Argued June 7, 1973.

Decided July 24, 1973.

Michael S. Wolly, N. L. R. B., for petitioner; Peter G. Nash, Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Paul J. Spielberg, Atty., N. L. R. B., Washington, D. C., on brief.

Thomas H. Schwarze, Detroit, Mich., for respondent; Keller, Thoma, McManus, Toppin & Schwarze, Detroit, Mich., on brief.

Before CELEBREZZE and McCREE, Circuit Judges, and MOYNAHAN,* District Judge.

CELEBREZZE, Circuit Judge.

This case is before us on petition by the Board for enforcement of its order of June 5, 1972, reported at 197 NLRB No. 47. In that order and the accompanying decision, the Board rejected the Trial Examiner's recommendation that the complaint be dismissed and found that Respondent (hereinafter the Company) had violated Sections 8(a)(1) and 8(a)(3) [1] of the Act in failing to recall for summer work in 1971 employees who had been laid off on July 8, 1970.

---

* The Honorable Bernard T. Moynahan, Jr., Chief Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

1. The Board also found that the Company had violated Section 8(a)(5) of the Act by altering its policy respecting recall of laid-off employees without consulting with the Union. That determination assumes the Union's right to recognition as the

bargaining agent. Since this issue was remanded to the Board by this Court in N.L.R.B. v. D. H. Farms Co., 465 F.2d 1230 (6th Cir. 1972), and is presently pending before the Board (see note 2, *infra*), enforcement of its order herein insofar as it relates to the Section 8(a) (5) violation is not sought in the present petition.

The Company is engaged in the manufacture of impregnated paper sensitivity discs. Its production workers are involved in the various phases of this manufacturing operation, which include impregnating large sheets of paper with a chemical solution, cutting the paper into small discs, printing the paper with appropriate dots, and packaging the finished discs. The Trial Examiner found that the various production operations are of a relatively unskilled nature and that there is considerable interchange of employees within the manufacturing process. The Company also employs laboratory and maintenance workers, but the Trial Examiner found that there is generally no interchange between these and the production employees.

On July 8, 1970, the Company laid off some 40 production employees, which constituted all but the supervisors and loaders on the manufacturing side of the Company's operations. It is undisputed that this lay-off was motivated by economic considerations. Within two weeks of the lay off and after the Company had reviewed its future production needs, 15 of the laid-off employees were recalled to permanent employment without a loss in seniority.

Pursuant to a July 10, 1970, petition for a representation election among the Company's production, laboratory, and maintenance workers, a pre-election representation hearing was held on August 8, 1970, to determine the eligibility to vote of some 24 production workers who remained laid-off on that date. Although the Company asserted at this time that these employees were permanently laid-off, the Regional Director found that they had a reasonable expectation of recall within a reasonable time in the future and that they were therefore eligible to vote.

The election was held on September 22, 1970, with 19 of the 24 laid-off employees voting under Company challenge. The unchallenged ballots of the active employees showed 10 votes for the Union and 18 against. Since the 19 challenged ballots by the laid-off employees could thus affect the outcome of the election, the Regional Director conducted an inquiry into the Company's challenges and ruled that in light of the August 8th pre-election hearing on this issue these laid-off employees were eligible to vote.[2] The challenged ballots were opened on February 26, 1971, resulting in 19 additional votes for the Union, which was ultimately certified as the unit representative.

Meanwhile, between that pre-election hearing on August 8, 1970, and the opening of the challenged ballots on February 26, 1971, the Company recalled to permanent positions five more of the laid-off employees. Four of these were recalled on August 17th, October 12th, November 12th, and December 29th, respectively, with no loss in seniority; the fifth was recalled on January 27th as a "new hire," pursuant to the decision of the Company's general manager that laid-off employees would thenceforth be recalled as new employees, with no accrued seniority rights.

No one from the remaining group of some 20 laid-off employees was recalled after the challenged ballots were opened on February 26, 1971. On May 17, 1971 and June 1, 1971, however, a total of four temporary employees—all college students—were hired to work in the

---

2. Finding no substantial issue warranting review, the Board upheld this finding by the Regional Director. In a subsequent unfair labor practice proceeding in which the Company further challenged the representation proceeding, this Court remanded the case to the Board for a hearing on the eligibility of the laid-off employees to vote at the time of the September 22, 1970, election. N.L.R.B. v. D. H. Farms Co., 465 F.2d 1230 (6th Cir. 1972). The Board's decision and order in the present case were rendered prior to that remand, and that case is presently pending before the Board. Because the portions of its June 5, 1972, order for which the Board presently seeks enforcement do not rest upon the voting eligibility status of the laid-off employees, our disposition of the present case need not await the Board's final resolution of this issue.

Company's manufacturing operations during that summer. On September 17, 1971, one temporary employee was hired to work in the Company's print shop for a period of one week. Although none of these temporary employees was among those laid off on July 8, 1970, each of them had previously worked for the Company.

The complaint charged that the Company refused to recall its laid-off employees to fill the above positions in the summer of 1971 because those employees had voted for the Union, as revealed when their ballots were opened on February 26, 1971. In rejecting this charge, the Trial Examiner found that each of the four college students hired to fill the temporary summer positions in 1971 had worked on previous summer months as temporary employees and that when they were first hired they were told that they were being hired as temporary employees without any fringe benefits such as health insurance, paid holidays, and paid vacations. The evidence revealed that two of these employees were hired after they personally came to the plant to apply for work and the other two were called by the plant manager, who had retained their applications. Emphasizing that these four employees were expressly hired for temporary positions in the summer of 1971 and the absence of any showing whatsoever of anti-union animus on the part of the Company in so hiring these employees, the Trial Examiner ruled that the General Counsel had failed to prove discrimination against the laid-off regular employees who were not engaged to fill these temporary positions.

The Trial Examiner further found no discrimination in the hiring of a temporary employee in the print shop for one week commencing September 17, 1971. This employee had previously worked as a supervisory trainee in the print shop, had applied for a job about one month prior to the above date, and was hired specifically to perform this job for which she had previously been trained.

Rejecting these findings by the Trial Examiner, the Board ruled that the Company's failure to recall laid-off employees to fill the temporary vacancies in the summer of 1971, when considered in conjunction with the results of counting the challenged ballots, "obviously" presented a significant change in the Company's hiring practices, establishing a prima facie case of discrimination. Moreover, without setting forth the Company's purported legitimate business justifications for its actions, the Board summarily ruled that the Company had failed to rebut this prima facie case. From the record as a whole, we are unable to find substantial evidence to support these conclusions by the Board.

As to the Board's finding a prima facie case of discrimination against the laid-off employees, it is significant to note that the Board gave no apparent weight to the fact—as emphasized by the Trial Examiner—that the five employees hired for production work in May through September, 1971, were expressly hired on a temporary basis, whereas the laid-off employees recalled prior to the opening of the challenged ballots were recalled to permanent positions.[3] Although it cited as evidence of discrimination the Company's hiring for permanent employment two employees from outside the group of laid-off employees, the Board totally disregarded the fact that these permanent employees were hired for non-production jobs and the Trial Examiner's express finding that there was generally no interchange of employees between manufacturing and other operations of the Company. Moreover, it appears that the Company's hiring of both permanent and temporary non-production workers is outside the scope of the complaint, which merely charged discrimination in the Company's failure to recall laid-off

3. The last of the laid-off employees recalled was hired as a new employee, with no accrued seniority or benefits, on January 27, 1971. The record discloses, however, that she was not designated as a temporary employee, as were those hired in the summer months of 1971 for production work.

employees "to their former positions of employment."

We are thus unable to find substantial evidence to support the Board's finding a "significant change" in the Company's hiring practices after the challenged ballots were opened. The laid-off employees recalled prior to the opening of the challenged ballots were clearly hired as permanent employees. We conclude that absent any showing whatsoever of anti-union animus on the part of the Company, its failure to further recall laid-off employees to fill the temporary production positions during the summer months of 1971 does not present a prima facie case of discrimination.

Finding no substantial evidence to support the Board's finding of a prima facie case, we need not consider the Board's further finding that the Company failed to adduce evidence of a legitimate business justification for its actions. *See* N. L. R. B. v. Great Dane Trailers Co., 388 U.S. 26, 33–34, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967).

Enforcement of the Board's order is denied.